**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**


| | | |
|---|---|---|
| **CODY BARNHILL #1948527** | § | |
| | § | |
| **V.** | § | **W-20-CA-016-ADA** |
| | § | |
| **WARDEN DAVID LOFTIN, et al.** | § | |


## ORDER

Before the Court are Plaintiff's Complaint (#1), Plaintiff's More Definite Statement (#7), Defendants' Motion to Dismiss which the Court converted to a Motion for Summary Judgment (#15), Plaintiff's Memorandum of Law (#21), Defendants' Motion for Summary Judgment (#30), and Plaintiff's response (#44). Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

## STATEMENT OF THE CASE

At the time he filed his complaint pursuant to 42 U.S.C. § 1983, Plaintiff was confined in the Texas Department of Criminal Justice—Correctional Institutions Division. Plaintiff alleges that Defendants failed to repair the lights in his cell, causing him to fall and injure himself. Plaintiff sues Warden David Loftin, Assistant Warden Chimdi Akwitti, Assistant Warden Nick Clayton, Major Beau Smith, Sr., Major Lawrence H. Lighten, Lt. Shane Martin, Jimmie Winkfield, Jr., Sgt. Michael Kluck, Sgt. Christopher Sheehan, Steven Vass, and Nurse Tiffany Richardson. Plaintiff seeks compensatory and punitive damages of $500,000.

DISCUSSION AND ANALYSIS

A.     Factual Background

Plaintiff contends that between July 18, 2019, and September 17, 2019, he lived in a prison cell with no working lights. Plaintiff alleges, without evidence, that an unidentified TDCJ policy requires that a cell without working lights is supposed to be "red tagged," indicating that it is not safe for an offender to live there. Plaintiff claims that policy was ignored in his case. Plaintiff contends that he suffered injuries from tripping over things in the cell while trying to navigate in the dark. Plaintiff alleges he sprained his wrist and suffered from two concussions. As a result of his injuries, Plaintiff indicates he suffers from headaches, vertigo, insomnia, anxiety, nightmares, and blurred vision.

Defendants' summary judgment evidence shows that on July 23, 2019, Plaintiff filed a Step 1 grievance complaining that his cell had been without lights since July 18. Def. Ex. A at 087. The maintenance department received the grievance on August 14, 2019. *Id.* at 091. The delay from Plaintiff's grievance until the maintenance department was notified is unexplained. The maintenance supervisor immediately opened a work order to address the issue. *Id.* at 092-093. On August 20 and 21, 2019, the fixture in the cell was replaced and the work order was closed as completed. *Id.* at 080.

Additional issues arose with the lighting after the fixture was replaced, and a second work order was opened on August 23, 2019. *Id.* at 078, 081. Defendant Winkfield visited Plaintiff's cell on August 23, 2019, and determined the problems were far more extensive than replacing the fixture and that new electrical wires needed to be run. *Id.* at 081. Plaintiff calls specific attention to the fact that it took 22 days to have a

maintenance work order filed after his grievance regarding his lights. Plaintiff also claims that when Winkfield assessed the situation on August 23, 2019, one of the inmates that was assisting with the work sought to extort Plaintiff stating that he could fix the lights if Plaintiff had cash. Plaintiff indicated he did not have anything to give, so the inmate left and allegedly said "well its Friday, time to get drunk." Plaintiff claims he requested Winkfield move him to a different cell or get Plaintiff a night light. Plaintiff claims that Winkfield said that Plaintiff needed to "talk to the Warden about that." The electrical wires were eventually pulled and replaced on September 12, 2019. *Id.*

Plaintiff asserts that on August 25, 2019, Richardson laughed at him when Plaintiff indicated he had a head injury and said "I'm sure you're alright." Further, Plaintiff claims that on August 27, 2019, he talked with Richardson about his injuries and she entered into his medical records that Plaintiff was fine and did not request a doctor. Plaintiff claims that he "was not fine and badly wanted to see the doctor," but Plaintiff does not indicate that he made that request to Richardson.

Plaintiff submitted a sick call request on September 6, 2019, indicating that he had injured his wrist. Def. Ex. B at 623, 627. Plaintiff was examined the next day and explained that he had tripped on his shoes, tried catching himself, and injured his left wrist. *Id.* at 624. Plaintiff also sought a renewal of a previous prescription for a muscle relaxer. *Id.* Plaintiff's wrist was examined, and showed no gross deformity, but Plaintiff exhibited pain with range of motion. *Id.* An x-ray was ordered and scheduled for one week later, on September 13, 2019. *Id.* No fractures or dislocations were found from the x-ray, and no other abnormalities were noted. Def. Ex. C at 006. The final diagnosis was "left wrist

pain," no medications were prescribed, and Plaintiff was discharged. *Id.* at 002-008. Plaintiff claims that the reason he was never diagnosed with a sprained wrist was due to the period of time before he obtained x-rays. Plaintiff contends that the delay meant that "healing had took place." Plaintiff notes that his medical notes clearly state that he had limited movement and pain in his wrist just days after the injury.

Plaintiff first complained that he was suffering from headaches on November 1, 2019. Def. Ex. B at 504, 512. Plaintiff was examined on November 6, 2019, where he reported that his headaches had started after he fell and hit his head two or three months ago. *Id.* at 491-92. At a later medical visit, Plaintiff claimed that the headaches began when he slipped while standing on top of his sink and hit his head on the toilet bowl. *Id.* at 205. Plaintiff complained of nausea and vertigo. *Id.* at 492. An expedited head CT scan was ordered. *Id.* On November 22, 2019, Plaintiff was admitted to the hospital where he received a CT scan which found no abnormalities. *Id.* at 018, 022. The final diagnosis was a "headache." *Id.*

Plaintiff alleges that his slip and fall while standing on his toilet sink, resulting in "busting my head wide open," was due to trying to breathe during a fire. Plaintiff claims that an inmate in a neighboring cell, who also had no lights, started a fire. Plaintiff claims that the fire lasted 37 minutes and that the exhaust fan was not turned on to remove the smoke until after the fire had been extinguished. Plaintiff claims he had to stand on his sink to reach a vent in the cell to breathe. Plaintiff claims that, while climbing down from the sink and "unable to see anything" due to the lack of lights, he fell and hit his head. Plaintiff claims there is a scar on the back of his head, contradicting Richardson's claim

that Plaintiff was not injured. Plaintiff also reiterates his claim that he has suffered from changes in his vision and indicates that after seeing an optometrist he will have evidence of the vision changes.

B.    Summary Judgment Standard

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995); Fed. R. Civ. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323-24. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial." *Id.* at 324. The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

C.    Eleventh Amendment Immunity

Pursuant to the Eleventh Amendment, federal courts are without jurisdiction over suits against a state unless that state has waived its sovereign immunity or Congress has clearly abrogated it. *Moore v. La. Bd. of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury. *Green v. State Bar of Texas*, 27 F.3d 1083,1087 (5th Cir. 1994). Being sued in their official capacities for monetary damages, Defendants are immune from suit under the Eleventh Amendment because such an action is the same as a suit against the sovereign. *Pennhurst State School Hosp. v. Halderman*, 465 U.S. 89 (1984).

D.    No Physical Injury

Defendants argue that the summary judgment evidence shows that Plaintiff suffered only de minimis injuries and thus he is not entitled to recover damages. The

Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), bars recovery of damages for mental anguish absent a showing that the plaintiff suffered a physical injury while in custody. The Fifth Circuit has held that allegations of "mental anguish, emotional distress, psychological harm, and insomnia" are barred by § 1997e(e). *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).

In this case, Plaintiff alleged he suffered physical injuries. Specifically, he claimed he suffered from a sprained wrist and two concussions. Defendants responded to his claimed injuries with summary judgment evidence showing that Plaintiff did not suffer from the injuries he claimed. Instead, Defendants showed that Plaintiff suffered from wrist pain and headaches. Whether Plaintiff suffered a sprained wrist and concussions as he alleges, or he only had a sore wrist and headaches, the Court cannot say Plaintiff had no physical injury whatsoever. Therefore, Plaintiff is not barred from damages claims. Plaintiff's credibility, however, is in question. Regardless, as discussed below, Plaintiff fails to show deliberate indifference and fails to show any constitutional violation.

E.    No Personal Involvement

Plaintiff fails to allege any personal involvement by Warden David Loftin, Assistant Warden Chimdi Akwitti, Assistant Warden Nick Clayton, Major Beau Smith, Sr., Major Lawrence H. Lighten, Sgt. Michael Kluck, Sgt. Christopher Sheehan, and Steven Vass. To the extent Plaintiff is asserting these Defendants are liable due to their supervisory positions those claims are dismissed. Supervisory officials cannot be held vicariously liable in § 1983 cases solely on the basis of their employer-employee relationship. *Monell v. Department of Social Services*, 436 U.S. 658, 693 (1978); *Lozano v. Smith*, 718 F.2d 756,

768 (5th Cir. 1983). If a supervisor is not personally involved in the alleged constitutional deprivation, he may be held liable only if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). In order to demonstrate a causal connection, the supervisor would have to "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* at 304. Plaintiff identifies no such policies.

Plaintiff claims that Defendants Loftin, Akwitti, Clayton, Smith, Sr., Lighten, Kluck, Sheehan, or Vass never responded to his written complaints and that those who spoke with him explained the situation and that the repairs were being undertaken.[1] Plaintiff fails to allege that he submitted written complaints in the proper way or that any of these Defendants ever received such complaints from him, much less that they ignored the complaints. In short, Plaintiff makes no allegations that Defendants Loftin, Akwitti, Clayton, Smith, Sr., Lighten, Kluck, Sheehan, or Vass were personally involved.

F.    Qualified Immunity

A government official performing a discretionary function is entitled to qualified immunity unless his actions violate a clearly established right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Where, as here, a defendant invokes qualified immunity in a motion for summary judgment, it is the plaintiff's burden to show that the defendant is not entitled to qualified immunity. *See*

---

[1] Defendant Loftin did not file an answer in this case, nonetheless, the allegations against him are insufficient to show that he was personally involved or deliberately indifferent for the reasons explained here.

*Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). That is, the plaintiff must present evidence sufficient to create a genuine dispute of material fact as to whether (1) the official's conduct violated a constitutional right of the plaintiff, and (2) the constitutional right was clearly established so that a reasonable official in the defendant's situation would have understood that his conduct violated that right. *See id.*; *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. *Baker v. McCollan*, 443 U.S. 137 (1979). As the United States Fifth Circuit Court of Appeals has observed, "'[I]t is fundamental to our federal jurisprudence that state law tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right.'" *Price v. Roark*, 256 F.3d 364, 370 (5th Cir. 2001) (quoting *Nesmith v. Taylor*, 715 F.2d 194, 196 (5th Cir. 1983)).

The Eighth Amendment prohibits cruel and unusual punishment. Prison officials must provide humane conditions of confinement, ensure that inmates receive adequate food, clothing, shelter, and medical care, and take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8–10 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Such a violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer*, 511 U.S. at 834. "Deliberate

indifference is an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer*, 511 U.S. at 837.

Deliberate indifference to serious medical needs also may be manifested by prison doctors in their response to the prisoner's needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). However, unsuccessful medical treatment or disagreement between an inmate and his doctor concerning the manner of treatment does not suffice. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Similarly, claims of inadvertent failure to provide medical care or negligent diagnosis are insufficient to state a claim of inadequate medical care. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). A claim that additional diagnostic techniques or forms of treatment should have been utilized is also inadequate for purposes of § 1983. *Estelle*, 429 U.S. at 107. In short, a claim of medical malpractice does not amount to a constitutional violation merely because the plaintiff is a prisoner. *Id.* at 106.

Plaintiff argues Defendants were aware of the problems with the lights in his cell and that Defendants failed to take action. He asserts that no one was willing to move him to a different cell or provide him with a night light. Plaintiff claims Defendant Martin told him that he had called the electrician on September 4, 2019. Martin then told Plaintiff on September 10, 2019, that the lights would be fixed that day. However, on September 11,

2019, Martin allegedly told Plaintiff that the electrician was still waiting for wires. As explained above, the repairs were eventually done the following day by Defendant Winkfield. Plaintiff also claims that Defendant Richardson failed to provide him adequate medical treatment when he spoke with her from his cell on August 25, 2019. She allegedly heard him describe his injuries noting, "I'm sure you're alright" and later checking him over and stating that his injuries were "nothing too serious."

The undisputed summary judgment evidence states that he told Defendant Richardson that he did not need medical attention but was "doing fine, he just wanted someone to tell the officers to fix his lights." Def. Ex. B at 654. Plaintiff's head was, however, examined at that time and no signs or symptoms of any trauma were noted. *Id.* Indeed, Defendant Richardson asked Plaintiff if he was in pain or wanted to see a medical provider and Plaintiff responded "no." *Id.* Plaintiff indicates that he did want to see a medical provider at the time and was in pain, but he fails to allege that he actually told Richardson that information. He alleges only that "she put into her computer that I was fine and didn't request to see the doctor. I was not fine and badly wanted to see the doctor."

The Court acknowledges that the failure to repair Plaintiff's cell light took significantly longer than it should have. The Court also acknowledges that this likely caused Plaintiff some degree of inconvenience and may have led him to fall. However, it takes more than inconvenience and slow maintenance work to establish the violation of a constitutional right. To the extent Plaintiff claims that TDCJ policy was violated because his cell should have been "red tagged," The mere allegation that prison policies were not

followed does not state a claim. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam).

The undisputed summary judgment evidence shows that no Defendant knew of and disregarded an excessive risk to Plaintiff's health or safety. At most, Defendants should have been aware of some risk to Plaintiff from being in a cell without working lights, but there is nothing about the lights being out that would lead to an inference that a substantial risk of serious harm exists. Even Plaintiff acknowledges that one of his injuries was caused more by his actions when dealing with a fire than it was due to the lights being out. This risk was not something any Defendant could or should have inferred. Even more importantly, even if there were facts from which the inference could be drawn that a substantial risk of serious harm existed, there is no evidence whatsoever that any Defendant drew such an inference.

While multiple people were undoubtedly aware of the need for lights in Plaintiff's cell, the undisputed summary judgment evidence shows that there were actions being taken to rectify the situation. While the actions took longer than Plaintiff desired, there is no indication that Defendants were deliberately indifferent. At most, Plaintiff has asserted that Defendants were negligent in failing to promptly fix his lights or move him to a different cell until his lights could be fixed, but that does not amount to a constitutional violation.

Plaintiff's claims regarding his medical treatment by Defendant Richardson, are likewise not constitutional violations. Plaintiff does not dispute the evidence showing that he did not seek medical treatment for his wrist until September 6, 2019, and he was seen

on September 10, 2019. Similarly, Plaintiff does not dispute that he first complained of headaches on November 1, 2019, over a month after his lighting issues had been fixed. Plaintiff had a doctor's visit on November 6, 2019. Even to the extent there was any delay in his medical care, such delay can only state a constitutional claim if it is due to deliberate indifference and it results in substantial harm *See, e.g, Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Plaintiff admits that Richardson examined him and found his injuries were not serious. Plaintiff received both a head CT and x-rays, neither of which found any substantial injury whatsoever. Medical records show that Defendant Richardson quickly responded to Plaintiff's medical complaints and made an objective assessment during his clinic visit, that Plaintiff received continued care and treatment, and that his medical concerns were addressed. Even assuming that Richardson failed to properly diagnose Plaintiff's injuries, Plaintiff's claims would only establish, at best, a disagreement with Plaintiff's medical treatment, negligence, or medical malpractice—none of which amounts to a constitutional violation.

CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Dismiss which the Court converted to a Motion for Summary Judgment (#15) and Defendants' Motion for Summary Judgment (#30) is **GRANTED**.

It is further **ORDERED** that Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**.

It is finally **ORDERED** that all other pending motions are **DISMISSED**.

**SIGNED** on February 8, 2022

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE